**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Northern Division*

| | |
|---|---|
| MOTHER DOE, *Individually,* | * |
| *And as Mother and Next Friend of* | |
| *Her Child*, STUDENT DOE #1, | * |
| c/o Ledyard Law LLC | |
| 36 South Charles Street, Suite 901 | * |
| Baltimore, Maryland 21201 | |
| | * |
| *And* | |
| | * |
| MOTHER DOE, *Individually,* | |
| *And as Mother and Next Friend of* | * |
| *Her Child*, STUDENT DOE #2, | |
| c/o Ledyard Law LLC | * |
| 36 South Charles Street, Suite 901 | |
| Baltimore, Maryland 21201 | * |
| | |
| *Plaintiffs*, | * |
| | |
| v. | * |
| | |
| DIOCESE OF WILMINGTON SCHOOLS, | * |
| INC. | |
| 11242 Racetrack Road | * |
| Berlin, Maryland 21811 | |
| | * |
| *Serve On: Resident Agent* | |
| Diocese of Wilmington Schools, Inc. | * |
| 1626 N. Union Street, | |
| Wilmington, Delaware 19806 | * |
| | |
| *And* | * |
| | |
| CATHOLIC DIOCESE OF WILMINGTON, | * |
| INC. | |
| 1626 N. Union St. | * |
| Wilmington, DE  19806 | |
| | * |
| *Serve On: Resident Agent* | |
| Mr. Brian Moore | * |
| 1626 N. Union Street, | |
| Wilmington, Delaware 19806 | * |

DIOCESE OF WILMINGTON SCHOOLS          *
FUND
1925 Delaware Avenue                   *
Wilmington, Delaware 19806
                                       *

    *Serve On: Resident Agent*
    Joseph P. Corsini                 *
    1925 Delaware Avenue
    Wilmington, Delaware 19806         *

    *And*                             *

CATHOLIC CHARITIES OF THE              *
DIOCESE OF WILMINGTON INC.
30632 Hampden Avenue                   *
Princess Anne, Maryland 21853
                                       *

    *Serve On: Resident Agent*
    Tyantha Randall                   *
    30632 Hampden Avenue
    Princess Anne, Maryland 21853      *

    *And*                             *

SAINTS PETER & PAUL                    *
HIGH SCHOOL
1212 S. Washington Street              *
Easton, Maryland 21601
                                       *

    *Serve On: Resident Agent*
    Peggy Wilson, Chairman of Board   *
    1212 S. Washington Street
    Easton, Maryland 21601             *

    *Defendants.*                     *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## **COMPLAINT & JURY DEMAND**

Mother Doe, as Parent(s), Guardian(s), and Next Friend(s) of Student Doe #1 and #2, by and through David C.M. Ledyard and Ledyard Law LLC, sue(s) Defendant(s), and state(s):

<u>NATURE OF THE ACTION</u>

1.      The Plaintiffs brings this civil action against Defendants seeking damages and/or other legal relief through multiple state tort-based causes of action for Defendants' action/inaction related to occurrences that took place on school grounds (owned, managed, and/or operated by Defendants) during school hours.

<u>THE PARTIES</u>

2.      Mother Doe is and was a citizen of Ponte Vedra Beach, Florida.  Mother Doe is the parent of Student Doe #1 and Student Doe #2.

3.      Student Doe #1 and Student Doe #2 both also reside with Mother Doe in Ponte Vedra Beach, Florida.

4.      At all times relevant to this complaint, Student Doe #1 was a student at Saints Peter & Paul High School located at 1212 South Washington Street, Easton, Maryland 21601 (the "School" and/or "Defendant School).

5.      At all times relevant to this complaint, Student Doe #2 was a student at Saints Peter & Paul High School located at 1212 South Washington Street, Easton, Maryland 21601 (the "School" and/or "Defendant School).

6.      Saints Peter & Paul High School was owned, operated, and/or otherwise controlled by Defendants Diocese of Wilmington Schools, Inc., the Catholic Diocese of Wilmington, Inc., Diocese of Wilmington Schools Fund, Catholic Charities of the Diocese of Wilmington Inc., and/or Saints Peter & Paul High School which will collectively be referred to as "School Defendants" and/or "Catholic Defendants" and/or "Defendants."

7.      "School Defendants" and/or "Catholic Defendants" and/or "Defendants" includes

agents, employees, servants, and contractors.

8.      Diocese of Wilmington Schools, Inc. is a foreign company organized and existing under the laws of the State of Delaware.

9.      The Catholic Diocese of Wilmington, Inc. is a foreign company organized and existing under the laws of the State of Delaware.

10.     Diocese of Wilmington Schools Fund is a foreign company organized and existing under the laws of the State of Delaware.

11.     Catholic Charities of the Diocese of Wilmington Inc. is a domestic company organized and existing under the laws of the State of Maryland within Somerset County, Maryland.

12.     Saints Peter & Paul High School is a domestic company organized and existing under the laws of the State of Maryland within Talbot County, Maryland.

## JURISDICTION & VENUE

13.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00. Complete diversity of citizenship exists because Plaintiffs are citizens of Florida and Defendants all reside in either Delaware or Maryland.

14.     Venue is proper in this District under 28 U.S.C. § 1391, where all of the events giving rise to Plaintiffs' claims occurred.

## FACTS COMMON TO ALL COUNTS

15.     Pursuant to Federal Rule of Civil Procedure 8(d), Plaintiff(s) set(s) forth multiple counts and prayers for relief regardless of consistency.

16.    Student Doe #1 and #2 were both 14 years old at all times relevant.

*History at Saints Peter and Paul*

17.    Both Student Doe #1 and #2 were students at Saints Peter and Paul Elementary and Middle School from third grade through the eighth grade.

18.    Furthermore, both Student Doe #1 and #2 were honors students while at Saints Peter and Paul Elementary and Middle School.

19.    Moreover, neither Student Doe #1 or #2 had any disciplinary history while attending Saints Peter and Paul Elementary and Middle School.

20.    Upon graduating from the eighth grade, both Student Doe #1 and #2 went to Saints Peter and Paul High School (the "School") on merit scholarships. Unbeknownst to Plaintiffs, that is where Plaintiffs' trouble with the School would begin.

*False Allegations/Rumors*

21.    During the 2022-2023 school year, another student ("Abusive Student #1") began attending the School.

22.    On or about November 8, 2022, Abusive Student #1 began spreading false allegations/rumors that Student Doe #1 raped her.

23.    Importantly, promptly upon learning of these false allegations/rumors, Plaintiffs reported the false allegations/rumors to Defendants and asked Defendants to assist them in putting a stop to the false allegations/rumors before they spread too far and caused further harm to Plaintiffs.

24.    Defendants knew that the rumor could cause and was causing harm to Student Doe #1 and #2 and would cause more harm if it was not stopped. However, Plaintiffs received no response to this plea for help and Defendants took no action.

25.     Additionally, on or about November 9, 2022, Student Doe #1 stayed home from school due to the false allegations/rumors that were being spread throughout the school about her. The false allegations/rumors were especially impactful on Student Doe #1's mental health as Student Doe #1 had previously been bullied extensively by another student at the School ("Abusive Student #2").

26.     However, on or about November 9, 2022, Student Doe #2 attended School and was questioned extensively about the false allegations/rumors. Furthermore, Student Doe #2 overheard Abusive Student #2 telling multiple seniors that Student Doe #1 was being charged for raping Abusive Student #1 and that now "[Student Doe #1] is trying to play the victim."

27.     Upon learning these further false allegations/rumors, Plaintiffs again reported them to Defendants and requested assistance in putting a stop to the clear bullying and harassment that was occurring. Again, despite Plaintiffs' plea for help, Defendants took no action.

28.     On or about November 15, 2022, Student Doe #2 began to be bullied/harassed by students at the School, including Abusive Student #1, due to her association with Student Doe #1.

29.     Yet again, these reports of bullying/harassment were reported to Defendants and Defendants again ignored Plaintiffs reports and requests for help.

30.     Due to Defendants' inaction, the false allegations/rumors spread rapidly and students from schools in the surrounding areas began to reach out to Plaintiffs regarding the allegations.

31.     Plaintiffs received reports from other parents at the school that they were aware that their children had been contacted by Abusive Student #1 and that Abusive Student #1 had spread the false allegations/rumors to their children. This too was reported to Defendants, and Plaintiffs again requested that something be done to put an end to the serious false allegations/rumors at the

school and again Defendants ignored Plaintiffs request.

32.     Student Doe #1 had to, on occasion, eat lunch in the School restroom to avoid being constantly bullied by other students that had heard the false allegations/rumors that were started by Abusive Student #1 and #2. Student Doe #1 was forced on multiple occasions to eat her meals in the restroom to avoid the physical and mental bullying/harassment.

33.     Furthermore, both Student Doe #1 and #2 were constantly laughed at, treated cruelly, made fun of, and otherwise bullied/harassed while at the School.

34.     The false allegations/rumors that were spread caused Student Doe #1 to experience depression and anxiety. This caused Student Doe #1 to seek crisis intervention with a therapist. Notably, Student Doe #1 was noted as high risk for self-harm and was required to meet with a therapist multiple times each week.

35.     Plaintiffs again pled with Defendants to take any steps to intervene at the School and Defendants refused to act.

36.     Due to Defendants' inaction, on or about November 17, 2022, Abusive Student #1 escalated the bullying/harassment by physically pushing Student Doe #1 while walking in an attempt to make Student Doe #1 fall. Unfortunately, this was not the only time that Abusive Student #1 attempted to physically harm Student Doe #1. All Abusive Student #1's physical assaults of Student Doe #1 were reported to Defendants and again Plaintiffs to no avail requested intervention from Defendants.

37.     On or about November 18, 2022, due to the escalation of the bullying/harassment at School and resultant mental/emotional/psychological/physical harm, coupled with the inaction of Defendants to protected Student Doe #1 and #2, the School no longer was a safe and healthy environment for Student Doe #1 and #2.

38.    As a result, Student Doe #1 and #2 were kept home from school.

39.    Defendants remained inactive despite the fact that Defendants had a policy that they would not tolerate bullying.

40.    At no point did either Abusive Student #1 or #2 face any consequences for either the physical abuse or false allegations/rumors.

41.    Due to Defendants lack of action, the bullying/harassment of both Student Doe #1 and #2 continued at the school and the false allegations/rumors spread throughout the entire school and surrounding community.

42.    The bullying/harassment, initiated by Abusive Student #1, reached a level so egregious that Student Doe #1 and #2 were unable to focus on their schoolwork and Student Doe #1's mental health declined to the point of suicidal ideation.

43.    Notably, Defendants inaction was taken by the School and students at the school as agreement that the false allegations/rumors were true which further spread the false allegations/rumors and caused Student Doe #1 and #2 to be subjected to further abuse/bullying/harassment.

44.    Due to Defendants' lack of action, the bullying/harassment, and the widely spread false allegations/rumors, on or about December 8, 2022, Plaintiffs made it clear to Defendants that Student Doe #1 and #2 would be transferring out of the School and would attend St. Mary's. Plaintiffs specifically requested that Defendant refrain from letting the news get out regarding where Student Doe #1 and #2 would be transferring as they were worried that if the word was spread then the false allegations/rumors would intentionally be spread to the students at St. Mary's.

45.    Defendants represented to Plaintiffs that they would keep the location of the school Student Doe #1 and #2 were going to transfer to, St. Mary's, a secret.

46.     During all of the above events, Plaintiffs were also undergoing enormous stress as the parents of Abusive Student #1 filed for a peace order against Student Doe #1 based on the false allegations/rumor. When the peace order was initially denied, the parent of Abusive Student #1 appealed the decision. At the hearing for the appeal, the parents of Abusive Student #1 again made false allegations regarding Student Doe #1. However, the peace order was again denied, and the Judge found there was no evidence to support Abusive Student #1's false allegations/rumors. Defendants were made aware of these events.

47.     Unfortunately, the news regarding where Student Doe #1 and #2 was not kept silent.

48.     Students at the school, including Abusive Student #1 began spreading rumors throughout St. Mary's that "[Student Doe #1] was kicked out of Saints Peter and Paul High School for rape."

49.     Furthermore, it became known that Abusive Student #1 spread further false allegations/rumors throughout the School that "this would all be over on Friday when we go to court and I have [Student Doe #1] kicked out of school for raping me." This led to students at St. Mary's being told that "[Student Doe #1] was kicked out of Saint Peter and Paul High School for rape."

50.     These additional false allegations/rumors were also reported to Defendants. However, consistent with their intentional inaction, none of the students, including Abusive Student #1 faced any consequences for the harm they did.

51.     The vice principal of St. Mary's let Plaintiffs know that the false allegations/rumors had been spread to the students at St. Mary's.

52.     Due to the news of Student Doe #1 and #2's transfer to St. Mary's not having been kept secret, Student Doe #1 and #2 were unable to transfer to St. Mary's.

53.     Shortly afterwards, Plaintiffs were made aware that School students, including Abusive Student #1, had spread the false allegations/rumors about Student Doe #1 to all Maryland schools within driving distance of Plaintiffs' residence. As such, Plaintiffs then were forced to transfer out of the State of Maryland for the health and safety of Student Doe #1 and #2.

54.     Moreover, Plaintiffs now refrained from sharing the name of the new school with Defendants to ensure that the name of the school was not again spread, and the false allegations/rumors were not spread to the new school as they were with St. Mary's.

55.     To effectuate the transfer to the out of state school, Plaintiffs had requested transcripts to be sent. Unfortunately, Defendants refused to provide Plaintiffs with Student Doe #1 and #2's school transcripts.

56.     Additionally, Defendants refused to (1) reimburse Plaintiffs for their tuition and (2) demanded that Plaintiffs continue to pay the tuition for Student Doe #1 and #2 through the end of the school year despite the fact that Student Doe #1 and #2's transfer from the School was necessitated by Defendants' inaction and failure to protect Student Doe #1 and #2. In fact, Plaintiffs continued to be billed for tuition despite not attending the School.

57.     Abusive Student #1 and her parents had extensive history of assault, domestic violence, firearms charges, restraining orders, and child abuse.

58.     As such, Defendants were aware that Abusive Student #1 had a history of abuse behavior and harm to others and still failed to protect Student Doe #1 and #2 from Abusive Student #1.

59.     Notably, Defendants had a firm zero tolerance policy for bullying/harassment. Despite this, none of the students, including Abusive Student #1 and #2, faced any consequences for the participation in the bullying/harassment of Student Doe #1 and #2. Moreover, Defendants

declined to provide Plaintiffs with any assistance or guidance and ignored Plaintiffs multiple requests for a bullying complaint form.

60.     In being forced to transfer Student Doe #1 and #2 out of the State of Maryland, Plaintiffs were subjected to incredible financial burden and emotional distress.

61.     Moreover, Student Doe #1 and #2 has had to undergo extensive mental health treatment due to the physical/mental abuse/bullying/harassment that Defendants allowed to occur on School grounds.

62.     Due to Defendants action/inaction, Student Doe #1 and #2 were unable to function normally on a daily basis and missed significant time from school.

63.     Defendants were required to confirm that teachers, staff, and administrators met the minimum qualifications for working inside a school and that teachers, staff, and administrators met the minimum qualifications, training, and experience for working with students, including Student Doe #1 and #2, the students that spread the false allegations/rumors about Student Doe #1, and the students that physically/mentally bullied/harassed Student Doe #1 and #2. Defendants failed to take any of these actions.

64.     Defendants were required to provide teachers, staff, and administrators with proper supervision to deal with students including keep students safe from other students threatening their health and safety. Defendants failed to take any of these actions.

65.     At all relevant times, the employees of Defendants, were acting within the scope of their employment in matters relating to Student Doe #1 and #2, which included, but was not limited to, supervising Student Doe #1 and #2, ensuring the safety of Student Doe #1 and #2, interacting with Student Doe #1 and #2, and monitoring Student Doe #1 and #2.

66.     At all relevant times, Student Doe #1 and #2 were under the care, custody, and

control of Defendants, its agents, servants, and employees.

67.    Defendants have an *in loco parentis* relationship with its students and has a special duty to protect students from harm.

68.    None of the alleged actions and/or inactions stated above had any educational value or provided any benefit to Student Doe #1 and #2, comported with best practices, or comported with training, methods, or techniques used to keep students safe from injury or harm.

69.    Defendants' teachers, staff, and administrators could not have acted/failed to act in the manner described had they not been employed by Defendant. Defendant's teachers, staff, and administrators employment by Defendants allowed Defendants' teachers, staff, and administrators access to Student Doe #1 and #2.

70.    Prior to the 2022-2023 School year, Defendants' teachers, staff, and administrators lacked the training, skills, knowledge, and ability to properly ensure the safety of Student Doe #1 and #2.

71.    Moreover, Defendants never inquired into Defendants' teachers, staff, and administrators' qualifications, training, or experience in instructing students.

72.    Defendants' teachers, staff, and administrators had no experience, qualification, training, or experience in instructing students.

73.    Plaintiffs are only seeking a monetary remedy, not an educational remedy.

### COUNT I – Negligence
### *Plaintiffs v. Defendants*

74.    Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs, as if fully set forth herein.

75.    Defendants knew that Student Doe #1 and #2 were being bullied. Defendants knew

that the false allegations/rumors along with other bullying that Student Doe #1 and #2 were suffering would have a psychological impact on Student Doe #1 and #2. Regardless of Defendants knowledge, Defendants decided to take no action.

76.     Defendants had a had a strict policy of not tolerating bullying of any of its students. However, Defendants ignored the reports of Student Doe #1 and #2 and allowed the bullying to continue.

77.     Defendants knew that their silence on the issue would be taken as an endorsement of the veracity of the claims about Student Doe #1 and #2. Defendants also knew that their silence/endorsement would make the situation worse and would worsen the psychological impact on Student Doe #1 and #2. Defendants also knew that the student who started the rumor about Student Doe #1 and #2 had a history of negative behavior that was harmful to students and the education environment. However, Defendants with this knowledge decided to remain silent and take no action.

78.     The Defendants owed a duty to parents and students, including Student Doe #1 and #2 and the Plaintiffs, to provide for the safety and care of students when those students are in the custody and control of the Defendants.  While students are in the custody and control of the Defendants, the Defendants have a special relationship with students and owe students the same duty that parents and guardians owe to the persons under their custody and control. The Defendants also have a duty to prevent an individual who posed an unreasonable risk of harm to students from interacting and having access to these students while they were under the custody, care, and control of the Defendants. Finally, Defendants had a duty to use reasonable care with students in their custody, care, and control.

79.     The Defendants breached the duty owed to Student Doe #1 and #2 and their parents

when their teachers, staff, and administrators allowed Student Doe #1 and #2 to be abused, harassed, and/or bullied. Additionally, Defendants breached the duty owed to Student Doe #1 and #2 and their parents when they allowed Plaintiffs' concerns and reports of abuse, harassment, and bullying to either be unanswered, inadequately dealt with, and/or ignored. Moreover, Defendants breached the duty owed to Student Doe #1 and #2 and their parents when their teachers, staff, and/or administrators failed to keep the location of Student Doe #1 and #2's new school secrete which led to Plaintiffs having to relocate outside the State of Maryland.

80.     The Defendants breached the duty owed to Student Doe #1 and #2 and their parents when the Defendants permitted the students who harmed Student Doe #1 and #2 to come into contact with Student Doe #1 and #2 and place both the other students and Student Doe #1 and #2 in a position for abuse to occur and knew or should have known the students was likely to abuse Student Doe #1 and #2.

81.     The Defendants breached the duty owed to Student Doe #1 and #2 when they allowed the students, including Abusive Student #1 and #2, to associate with Student Doe #1 and #2.

82.     The Defendants are responsible for the actions of their teachers, staff, and administrators.

83.     Plaintiffs suffered and sustained personal injuries, damages, and harms as a result of the breach of duty by the Defendants.

### COUNT II – Gross Negligence
### *Plaintiffs v. Defendants*

84.     Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs, as if fully set forth herein.

85.     Defendants knew that Student Doe #1 and #2 were being bullied. Defendants knew that the false allegations/rumors along with other bullying that Student Doe #1 and #2 were suffering would have a psychological impact on Student Doe #1 and #2. Regardless of Defendants knowledge, Defendants decided to take no action.

86.     Defendants had a had a strict policy of not tolerating bullying of any of its students. However, Defendants ignored the reports of Student Doe #1 and #2 and allowed the bullying to continue.

87.     Defendants knew that their silence on the issue would be taken as an endorsement of the veracity of the claims about Student Doe #1 and #2. Defendants also knew that their silence/endorsement would make the situation worse and would worsen the psychological impact on Student Doe #1 and #2. Defendants also knew that the student who started the rumor about Student Doe #1 and #2 had a history of negative behavior that was harmful to students and the education environment. However, Defendants with this knowledge decided to remain silent and take no action.

88.     Defendants owed Plaintiffs and all others a duty to act or refrain from acting in (a) a reckless disregard of the consequences as affecting life or property of another; (b) a thoughtless disregard of the consequences to others without the exertion of any effort to avoid them; (c) a manner that wantonly and willfully inflicts injury intentionally; or (d) a manner that is so utterly indifferent to the rights of others that he acts as if such rights did not exist.

89.     Defendant(s) breached this duty and were grossly negligent for the reasons stated above.

90.     In summary only, Defendants failed to (1) protect Student Doe #1 and #2, (2) take any action to stop the false allegations/rumors about Student Doe #1, (3) stop the

bullying/harassment of Student Doe #1 and #2, (4) make any of the students that abused/bullied/harassed Student Doe #1 and #2 face any consequences, and (4) failed to keep the name of the school that Student Doe #1 and #2 were going to be transferred to a secrete. Additionally, Defendants failed to take the reports of threats, abuse, harassment, and/or bullying seriously and thus either failed to take any action and/or failed to take the appropriate actions.

91.    Furthermore, Defendants breached their duty by violating Plaintiffs' right to privacy and inflicting emotional distress of Plaintiffs as outlined in this Complaint.

92.    Plaintiffs suffered and sustained personal injuries, damages, and harms as a direct and proximate result of the breach of duty by the Defendant.

## COUNT III – Breach of Fiduciary Duty
### _Plaintiffs v. Defendants_

93.    Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs, as if fully set forth herein.

94.    Defendants knew that Student Doe #1 and #2 were being bullied. Defendants knew that the false allegations/rumors along with other bullying that Student Doe #1 and #2 were suffering would have a psychological impact on Student Doe #1 and #2. Regardless of Defendants knowledge, Defendants decided to take no action.

95.    Defendants had a had a strict policy of not tolerating bullying of any of its students. However, Defendants ignored the reports of Student Doe #1 and #2 and allowed the bullying to continue.

96.    Defendants knew that their silence on the issue would be taken as an endorsement of the veracity of the claims about Student Doe #1 and #2. Defendants also knew that their silence/endorsement would make the situation worse and would worsen the psychological impact

on Student Doe #1 and #2. Defendants also knew that the student who started the rumor about Student Doe #1 and #2 had a history of negative behavior that was harmful to students and the education environment. However, Defendants with this knowledge decided to remain silent and take no action.

97.    A fiduciary relationship existed between Plaintiff(s) and Defendant(s). This fiduciary relationship is focused on ensuring/protecting the health and safety of students, such as Student Doe #1 and #2, that are in the care, custody, and/or control of Defendant as they have an in loco parentis relationship with those students. Furthermore, as Student Doe #1 and #2 was required to stay at the School during the school week, Defendant further assured Plaintiffs that they were creating a fiduciary relationship with Student Doe #1 and #2 and as such would ensure Student Doe #1 and #2's health and safety while at the School.

98.    Defendant(s) breached the duty owed by the fiduciary (Defendant(s)) to the beneficiary (Plaintiff(s)).

99.    Plaintiffs suffered and sustained personal injuries, damages, and harms as a result of the breach of the fiduciary duty by the Defendant.

## COUNT IV – Intentional Infliction of Emotional Distress
### _Plaintiffs v. Defendants_

100.    Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs, as if fully set forth herein.

101.    Defendants knew that Student Doe #1 and #2 were being bullied. Defendants knew that the false allegations/rumors along with other bullying that Student Doe #1 and #2 were suffering would have a psychological impact on Student Doe #1 and #2. Regardless of Defendants knowledge, Defendants decided to take no action.

102.    Defendants had a had a strict policy of not tolerating bullying of any of its students.

However, Defendants ignored the reports of Student Doe #1 and #2 and allowed the bullying to continue.

103.    Defendants knew that their silence on the issue would be taken as an endorsement of the veracity of the claims about Student Doe #1 and #2. Defendants also knew that their silence/endorsement would make the situation worse and would worsen the psychological impact on Student Doe #1 and #2. Defendants also knew that the student who started the rumor about Student Doe #1 and #2 had a history of negative behavior that was harmful to students and the education environment. However, Defendants with this knowledge decided to remain silent and take no action.

104.    The conduct of Defendants, their agents, and their employees was intentional or reckless, and in deliberate disregard of a high probability that emotional distress would result to the Plaintiffs.

105.    The conduct of Defendants, their agents, and their employees was extreme and outrageous and beyond the bounds of societal decency.

106.    As a direct and proximate result of the wrongful conduct and intentional infliction of emotional distress by Defendants, their agents, and their employees, Plaintiffs have sustained a severely disabling emotional response.

107.    Plaintiffs suffered and sustained personal injuries, damages, and harms as a result of the Intentional Infliction of Emotional Distress by the Defendants.

### COUNT V – Invasion of Privacy
#### _Plaintiffs v. Defendant_

108.    Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs, as if fully set forth herein.

109.    Defendants knew that Student Doe #1 and #2 were being bullied. Defendants knew that the false allegations/rumors along with other bullying that Student Doe #1 and #2 were suffering would have a psychological impact on Student Doe #1 and #2. Regardless of Defendants knowledge, Defendants decided to take no action.

110.    Defendants had a had a strict policy of not tolerating bullying of any of its students. However, Defendants ignored the reports of Student Doe #1 and #2 and allowed the bullying to continue.

111.    Defendants knew that their silence on the issue would be taken as an endorsement of the veracity of the claims about Student Doe #1 and #2. Defendants also knew that their silence/endorsement would make the situation worse and would worsen the psychological impact on Student Doe #1 and #2. Defendants also knew that the student who started the rumor about Student Doe #1 and #2 had a history of negative behavior that was harmful to students and the education environment. However, Defendants with this knowledge decided to remain silent and take no action.

112.    Defendants intentionally intruded upon Plaintiffs' private place and/or the affairs of Student Doe #1 and #2.

113.    Defendants unreasonably placed Student Doe #1 and #2 in a false light before the public.

114.    Student Doe #1 and #2 did not consent, and because of Student Doe #1 and #2's age and mental condition, could not consent to Defendants' actions.

115.    Student Doe #1 and #2's parents did not consent to Defendants' actions.

116.    Defendants' intrusions would be highly offensive to a reasonable person.

117.    The actions of Defendants were performed intentionally and with malice.

118.    Plaintiffs suffered personal injuries as a result of Defendants' wrongful actions.

## COUNT VI – Defamation (*Per Se*)
### *Plaintiffs v. Defendant*

119.    Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs, as if fully set forth herein.

120.    Defendants knew that Student Doe #1 and #2 were being bullied. Defendants knew that the false allegations/rumors along with other bullying that Student Doe #1 and #2 were suffering would have a psychological impact on Student Doe #1 and #2. Regardless of Defendants knowledge, Defendants decided to take no action.

121.    Defendants had a had a strict policy of not tolerating bullying of any of its students. However, Defendants ignored the reports of Student Doe #1 and #2 and allowed the bullying to continue.

122.    Defendants knew that their silence on the issue would be taken as an endorsement of the veracity of the claims about Student Doe #1 and #2. Defendants also knew that their silence/endorsement would make the situation worse and would worsen the psychological impact on Student Doe #1 and #2. Defendants also knew that the student who started the rumor about Student Doe #1 and #2 had a history of negative behavior that was harmful to students and the education environment. However, Defendants with this knowledge decided to remain silent and take no action.

123.    Defendants made defamatory communications to others at the school. Specifically, Defendants were informed that students at the school, including Abusive Student #1 and #2, were false allegations/rumors that Student Doe #1 raped Abusive Student #1. After learning that these allegations/rumors were false, instead following their zero bullying tolerance policy, Defendants

remained silent regarding the false allegations/rumors.

124.    Defendants silence was well understood by the School and attending students that Defendants were endorsing the false allegations/rumors.

125.    The Defendants were at fault in communicating these statements to the School and attending students because they had full knowledge that the allegations/rumors regarding Student Doe #1 were in fact false.

126.    Plaintiffs suffered and sustained personal injuries, damages, and harms as a result Defendants defamatory communications.

## COUNT VII – Breach Of Contract
### (*Plaintiff(s) v. Defendant(s)*)

127.    Plaintiff(s) incorporate(s) by reference and re-allege(s) the allegations contained in the preceding paragraphs, as if fully set forth herein.

128.    Defendants knew that Student Doe #1 and #2 were being bullied. Defendants knew that the false allegations/rumors along with other bullying that Student Doe #1 and #2 were suffering would have a psychological impact on Student Doe #1 and #2. Regardless of Defendants knowledge, Defendants decided to take no action.

129.    Defendants had a had a strict policy of not tolerating bullying of any of its students. However, Defendants ignored the reports of Student Doe #1 and #2 and allowed the bullying to continue.

130.    Defendants knew that their silence on the issue would be taken as an endorsement of the veracity of the claims about Student Doe #1 and #2. Defendants also knew that their silence/endorsement would make the situation worse and would worsen the psychological impact on Student Doe #1 and #2. Defendants also knew that the student who started the rumor about

Student Doe #1 and #2 had a history of negative behavior that was harmful to students and the education environment. However, Defendants with this knowledge decided to remain silent and take no action.

131.    A Contract between Plaintiffs and Defendants was formed in Talbot County, Maryland.

132.    Plaintiff(s) and Defendant(s) entered into this/these agreement(s) wherein Plaintiff(s) were entitled to certain benefits described above.

133.    As described above, Defendant(s) have materially breached this/these agreement(s).

134.    Plaintiff(s) has incurred a loss as a result of this/these material breach(es) by Defendant(s).

### COUNT VIII – Quantum Meruit
### (*Plaintiff(s) v. Defendant(s)*)

135.    Plaintiff(s) incorporate(s) by reference and re-allege(s) the allegations contained in the preceding paragraphs, as if fully set forth herein.

136.    Defendants knew that Student Doe #1 and #2 were being bullied. Defendants knew that the false allegations/rumors along with other bullying that Student Doe #1 and #2 were suffering would have a psychological impact on Student Doe #1 and #2. Regardless of Defendants knowledge, Defendants decided to take no action.

137.    Defendants had a had a strict policy of not tolerating bullying of any of its students. However, Defendants ignored the reports of Student Doe #1 and #2 and allowed the bullying to continue.

138.    Defendants knew that their silence on the issue would be taken as an endorsement of the veracity of the claims about Student Doe #1 and #2. Defendants also knew that their

silence/endorsement would make the situation worse and would worsen the psychological impact on Student Doe #1 and #2. Defendants also knew that the student who started the rumor about Student Doe #1 and #2 had a history of negative behavior that was harmful to students and the education environment. However, Defendants with this knowledge decided to remain silent and take no action.

139.    Plaintiff(s) provided Defendants with valuable compensation with the intention of receiving from Defendant(s) a valuable service.

140.    Defendant(s) accepted this compensation, received a benefit of such compensation, and knew that Plaintiff(s) expected to provided valuable services in return.

141.    All compensation rendered by Plaintiff(s) to Defendant(s) was rendered under such circumstances that Defendant(s) knew Plaintiff(s) expected to valuable services in return.

142.    As a result of Defendant(s) action(s) or inaction(s), Plaintiff(s) has/have incurred a loss.

## Count IX – Unjust Enrichment
### (*Plaintiff(s) v. Defendant(s)*)

143.    Plaintiff(s) incorporate(s) by reference and re-allege(s) the allegations contained in the preceding paragraphs, as if fully set forth herein.

144.    Defendants knew that Student Doe #1 and #2 were being bullied. Defendants knew that the false allegations/rumors along with other bullying that Student Doe #1 and #2 were suffering would have a psychological impact on Student Doe #1 and #2. Regardless of Defendants knowledge, Defendants decided to take no action.

145.    Defendants had a had a strict policy of not tolerating bullying of any of its students. However, Defendants ignored the reports of Student Doe #1 and #2 and allowed the bullying to

continue.

146.    Defendants knew that their silence on the issue would be taken as an endorsement of the veracity of the claims about Student Doe #1 and #2. Defendants also knew that their silence/endorsement would make the situation worse and would worsen the psychological impact on Student Doe #1 and #2. Defendants also knew that the student who started the rumor about Student Doe #1 and #2 had a history of negative behavior that was harmful to students and the education environment. However, Defendants with this knowledge decided to remain silent and take no action.

147.    Plaintiff(s) conferred a benefit upon Defendant(s) in the form of a premium.

148.    Defendant(s) was aware of, appreciated, and had knowledge of the benefit conferred by Plaintiff(s).

149.    It would be inequitable for Defendant(s) to accept or retain the benefit without providing the services to Plaintiff(s).

150.    As a result of Defendant(s) action(s) or inaction(s), Plaintiff(s) has/have incurred a loss.

### COUNT X – Negligent Misrepresentation
### (*Plaintiff(s) v. Defendant(s)*)

151.    Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs, as if fully set forth herein.

152.    Defendants knew that Student Doe #1 and #2 were being bullied. Defendants knew that the false allegations/rumors along with other bullying that Student Doe #1 and #2 were suffering would have a psychological impact on Student Doe #1 and #2. Regardless of Defendants knowledge, Defendants decided to take no action.

153.    Defendants had a had a strict policy of not tolerating bullying of any of its students. However, Defendants ignored the reports of Student Doe #1 and #2 and allowed the bullying to continue.

154.    Defendants knew that their silence on the issue would be taken as an endorsement of the veracity of the claims about Student Doe #1 and #2. Defendants also knew that their silence/endorsement would make the situation worse and would worsen the psychological impact on Student Doe #1 and #2. Defendants also knew that the student who started the rumor about Student Doe #1 and #2 had a history of negative behavior that was harmful to students and the education environment. However, Defendants with this knowledge decided to remain silent and take no action.

155.    Defendant(s), owing the Plaintiff(s) a duty of care, negligently misrepresented a material fact.

156.    Specifically, Defendants represented to Plaintiffs that they would keep the location of the school that Student Doe #1 and #2 were going to transfer to, St. Mary's, a secrete.

157.    Defendant(s) intended that Plaintiff(s) would act in reliance upon the misrepresentation.

158.    Defendant(s) knew the plaintiff probably would rely on the misrepresentation, which if false would cause damages to Plaintiff(s).

159.    Plaintiff(s) justifiably acted in reliance on the misrepresentation. Specifically, Plaintiffs did not take any other precautions to ensure the secrecy of the transfer.

160.    Plaintiff(s) suffered damages as a result of the reliance on the misrepresentation. When the secrete was negligently released by Defendants, Plaintiffs were forced to relocate outside the State of Maryland.

161.    As a result of Defendant(s) action(s) or inaction(s), Plaintiff(s) has/have incurred a loss.

**WHEREFORE**, Plaintiff(s), individually and separately, demand(s) judgment against Defendant(s), jointly and severally and/or individually and separately, in an amount of compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00), and an amount of punitive damages in excess of Seventy-Five Thousand Dollars ($75,000.00), plus reasonable attorneys fees, interest, and costs.

Respectfully Submitted,

**LEDYARD LAW LLC**

By: */s/ David C.M. Ledyard*
David C.M. Ledyard
Federal Bar No.: 29198
36 South Charles Street, Suite 901
Baltimore, Maryland 21201
Phone:  (410) 807-8077
Fax:     (410) 807-8076
david@ledyardlaw.com
*Counsel for Plaintiffs*

## DEMAND FOR JURY TRIAL

The Plaintiff requests a trial by jury on all issues raised herein.

*/s/ David C.M. Ledyard*
David C.M. Ledyard